IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JESSE L. MORGAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | Case No. 4:15-CV-1654 SNLJ |
| THE VOGLER LAW FIRM, P.C., *et al.*, | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |

**MEMORANDUM & ORDER**

This matter is before the Court on defendants' motions to dismiss (#14, #16). The following facts are alleged in the complaint and, for the purposes of the motions to dismiss, are presumed true.

Plaintiff Jesse Morgan resided at 7244 Rockspring Drive in St. Louis, Missouri from 2007 to 2015. The home was owned by Ronald Reynolds. Reynolds also owned a number of other properties in the St. Louis area that frequently required extensive repairs and maintenance. Reynolds hired plaintiff Morgan to perform repairs on Reynolds's various rental properties and, in return, Reynolds credited plaintiff for the value of the repairs against plaintiff's lease obligations. On December 12, 2014, the Vogler Law Firm sent plaintiff a collection letter ("Dunning Letter") demanding payment of $21,164.22 on behalf of Ron Reynolds. The Dunning Letter stated as follows:

This is to make demand for our client of the above stated sum.

Unless you notify this office in writing that you dispute the validity of this

1

> account or a portion thereof within the next 30 days, we will assume that the debt is valid.
>
> If any portion of the debt is disputed, you should advise us within that period and we will provide you with verification of the debt.
>
> Upon your written request within the 30 day period, this office will provide you with the name and address of the original creditor, if it differs from the name and address of the current creditor.

The Dunning Letter was signed by Vincent D. Vogler. At no time before receiving the letter had Reynolds sent plaintiff any delinquency notices, bills, or other correspondence claiming that plaintiff owed any money for unpaid lease payments. Plaintiff believed that he had complied with his agreement with Reynolds and that his rent payments satisfied his lease obligations in full. Plaintiff disputed the debt by sending a letter dated January 5, 2015. On January 13, 2015, the Vogler Law Firm sent plaintiff a letter that attached a handwritten accounting of alleged unpaid rent that was dated February 28, 2013. The letter was again signed by Vincent D. Vogler, but plaintiff alleges that non-lawyer Vincent V. Vogler (not to be confused with attorney Vincent D. Vogler) was actually responsible for sending that letter and the December 12 letter. Notably, the signatures on the two letters do not resemble one another. Plaintiff alleges that the Vogler Law Firm did not actually verify the debt, but rather that it merely forwarded the documentation initially provided by Reynolds. Further, the handwritten accounting includes unpaid rents only through February 2013, nearly two years before defendants sent the December 12, 2014 collection letter, and plaintiff says the accounting showed plaintiff owed $14,860 (not $21,164.22 as indicated on the initial letter).

Reynolds, through the Vogler Law Firm, filed a collection suit against plaintiff in St. Louis County on April 13, 2015, demanding $24,972.00. They did not attach a

written lease agreement to their petition because no such written agreement existed. Because the claim was based on an oral lease, the statute of limitations was five years, and plaintiffs thus say that the claim for debts from June 2007 through April 2010 were time barred. Plaintiffs also suggest that attorney Vincent D. Vogler had not reviewed the lawsuit and would not have filed the lawsuit with a facially time-barred claim.

On June 18, 2015, Reynolds left a message on plaintiff's voicemail saying "I'm going to evict you. You better give me a call. I'm going to call the attorney – YOU'RE EVICTED. GET THE F[---] OUT!" Plaintiff was at the time living in the subject residence with his wife and children and began to fear for the safety of his family as a result of the hostile phone message.

Plaintiff filed for bankruptcy as a result of Reynolds's collection suit because, although he did not owe the debt, he could not afford thousands of dollars it would cost to hire an attorney to defend the suit. On June 30, 2015, plaintiff filed for Chapter 7 bankruptcy protection. An automatic stay was thus in force pursuant to the United States Bankruptcy Code, which prohibited plaintiff's creditors and collectors from continuing to collect or to attempt to collect any debts. However, the collection lawsuit was set for a hearing on July 7, 2015, and Reynolds and his law firm moved for a default judgment in violation of the automatic stay. On July 9, 2015, and in further violation of the automatic stay, they filed a garnishment against plaintiff. Although plaintiff alleged in his complaint that Reynolds and his law firm received notification of the bankruptcy filing from the bankruptcy trustee or through conducting a "bankruptcy scrub" on the debt, plaintiff does not now disagree that the defendants did not receive actual notice until after the default judgment.

Plaintiff's bankruptcy attorney contacted the Vogler Firm on July 9 and directed them to cease violating the automatic stay. The Vogler Firm promised to set the default judgment aside and filed a motion to do so on July 9, but they did not call their motion up for a hearing until October 27, 2015. In the meantime, the default judgment remained a matter of public record and decreased plaintiff's credit score. Plaintiff had to hire another law firm to enter an appearance on his behalf to effectuate the setting aside of the default judgment. The collection lawsuit was dismissed on October 27, 2015, as well.

Plaintiff brought this lawsuit against defendants the Vogler Law Firm, P.C., Vincent D. Vogler, Vincent V. Vogler, and Ronald K. Reynolds on November 4, 2015. The complaint includes the following counts:

- Count I: Violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA"), against the Vogler Law Firm, Vincent D. Vogler, and Vincent V. Vogler.
- Count II: Violations of the Missouri Merchandising Practices Act, § 407.010 RSMo ("MMPA") against Ronald Reynolds.
- Count III: Malicious prosecution against all defendants.

Defendants have moved to dismiss each of the counts against them.

## I. Legal Standard

The purpose of a Rule 12(b)(6) motion to dismiss for failure to state a claim is to test the legal sufficiency of a complaint so as to eliminate those actions "which are fatally flawed in their legal premises and deigned to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001) (citing *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989)). "To survive a

motion to dismiss, a claim must be facially plausible, meaning that the 'factual content. . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Cole v. Homier Dist. Co., Inc.*, 599 F.3d 856, 861 (8th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court must "accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Id*. (quoting *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005)). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster. *Iqbal*, 556 U.S. at 678.

## II. Discussion

Each of plaintiff's three counts is discussed in turn below.

### A. Count I: Violations of FDCPA Against the Vogler Defendants

The purpose of the FDCPA is to eliminate abusive debt collection practices by debt collectors ...". *Dunham v. Portfolio Recovery Assocs.*, LLC, 663 F.3d 997, 1000 (8th Cir. 2011). To state a claim for violation of the FDCPA, plaintiff must allege facts establishing that (1) plaintiff is a consumer, (2) the payment obligation defendant seeks to recoup was a "debt" as defined by the statute, (3) the defendant is a "debt collector" as defined by the statute, and (4) the defendant violated any of the protections afforded by the FDCPA. *Id.* at 1001. Defendants do not appear to contest elements one through three. Each of their several arguments for dismissal pertains to whether they violated particular sections of the statute.

### 1. Section 1692g(a) --- contents of written notice

Section 1692g(a) of the FDCPA requires a debt collector, within five days of an "initial communication" about the collection of a debt, to send a consumer a written notice containing certain information about the debt and

> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
>
> (4) a statement that, if the consumer notifies the collector in writing within the thirty-day period that the debt is disputed, the collector will send verification of the debt to the consumer; and
>
> (5) a statement that, upon the consumer's written request within the thirty-day period, the collector will provide the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a). Plaintiff claims that defendants did not include the statements required in § 1692g(a)(4). Defendants argue that the initial communication itself included the required verification language. The language on the communication states:

> Unless you notify this office in writing that you dispute the validity of this account or a portion thereof within the next 30 days, we will assume that the debt is valid.
>
> If any portion of the debt is disputed, you should advise us within that period and we will provide you with verification of the debt.
>
> Upon your written request within the 30 day period, this office will provide you with the name and address of the original creditor, if it differs from the name and address of the current creditor

Here, plaintiff claims that defendants improperly required him to "dispute the validity of debt in writing." Complt. ¶ 22. As this Court acknowledged in *Busch v. Valarity, LLC*, No. 4:12-CV-2372-JAR, 2014 WL 466221, at *2 (E.D. Mo. Feb. 5, 2014),

6

the majority of courts have concluded that "§ 1692g(a)(3) does not impose a writing requirement on consumers." Defendants' statement *did* impose a writing requirement. Similarly, with respect to the Dunning Letter's statement about requesting verification of the debt, the Letter does *not* state (as it should pursuant to § 1692g(a)(4)) that plaintiff should advise the Letter's sender in writing. Although these seem like hypertechnical mistakes resulting in no prejudice to plaintiff, the FDCPA imposes strict liability for failing to provide the information it requires. *Grief v. Wilson, Elser, Moskowitz, Edelman & Dicker, LLP.*, 217 F. Supp. 2d 336, 339 (E.D.N.Y. 2002) (citing *Russell v. Equifax A.R.S.*, 74 F.3d 30, 33 (2d Cir. 1996)). Plaintiff has adequately pleaded that defendant did not conform to the statutory requirements of § 1692g(a).

The Court also notes that defendant addresses another aspect of plaintiff's § 1692g(a) claim to which plaintiff does not respond. Plaintiff's complaint alleges that the Dunning Letter "impermissibly calculated Plaintiff's dispute period from the date of the document as opposed to Plaintiff's receipt of the communication." (Complt. ¶ 25.) In fact, on its face, the letter (which was attached to the Complaint) states that the debt is assumed valid unless disputed "within 30 days after receipt of this notice." This aspect of plaintiff's claim under § 1692g(a) is therefore not cognizable.

### 2. Section 1692g(b) --- verification requirements

If a debt is disputed per § 1692g(a)(3), the debt collector "shall cease collection of the debt" until verification is obtained. 15 U.S.C. § 1692g(b); *see also Wilhelm v. Credico, Inc.*, 519 F.3d 416, 419 (8th Cir. 2008). Plaintiff claims that the verification defendants provided failed to verify that the debt was accurate. In fact, plaintiff alleges that the documentation showed the debt as totaling $15,910 --- not $21,164.22. Thus,

what defendants sent to plaintiff was not a verification at all, but defendants nonetheless continued to collect the debt by filing a lawsuit and obtaining a default judgment.

Defendants argue that the statute does not require a debt collector to provide a full accounting of the debt --- rather, they say it is intended only to address the problem of targeting the wrong person or attempting to collect already-paid debts. *See Dunham*, 663 F.3d at 1003. However, although a strict accounting may not be required, continuing to collect on even a portion of a debt that has not been "verified" does constitute a violation of the statute. *Haddad v. Alexander, Zelmanski, Danner & Fioritto, PLLC*, 758 F.3d 777, 786 (6th Cir. 2014), *reh'g denied* (Aug. 8, 2014) ("The Firm failed to verify this portion of the debt yet continued its efforts to collect this portion as well as the entirety by sending a letter demanding payment and placing a lien on Haddad's condominium. In doing so, the firm violated 15 U.S.C. § 1692g(b).") It thus appears that plaintiff has effectively pleaded violation of § 1692g(b).

### 3. Section 1692e(3) --- use of deceptive means by collector

Section 1692e(3) prohibits any debt collector from using any "false, deceptive, or misleading representation or means in connection with the collection of any debt…[including] [t]he false representation or implication that any individual is an attorney or that any communication is from an attorney." 15 U.S.C. § 1692e(3). Plaintiff alleges that the Vogler defendants violated § 1692e(3) by sending the Dunning Letter without meaningfully reviewing the contents of the letter or the underlying collection file. (Complt. ¶ 111(f).) *See, e.g.*, *Cordes v. Frederick J. Hanna & Associates, P.C.*, 789 F. Supp. 2d 1173, 1178 (D. Minn. 2011) (granting partial summary judgment to debtor

8

where dunning letter, signed by an attorney, was sent before a "meaningful review" of debtor's personal account was made).

Defendants say they are entitled to dismissal of this claim because plaintiff makes no factual averments in support of that conclusion but rather states merely that because plaintiff disagrees with the amount sought, no meaningful review could have taken place. Plaintiff points out that he pleaded details such as the different-looking signatures on the two letters he received from defendant Vincent D. Vogler, the fact that neither letter included initials indicating it had in fact been prepared by Vincent D. Vogler, and the fact that an attorney would not have sent letters containing the facial statutory violations regarding § 1692a. Plaintiff also asserts that an attorney making a meaningful review of the verification letter would have noticed that the allegedly supporting documents did not support the $21,164.22 debt they were pursuing. At this stage, at which the Court presumes plaintiff's allegations are true, plaintiff has adequately pleaded facts to support a facially plausible claim for violation of § 1692e(3).

### 4. Section 1692e(5) --- threats to bring time barred legal action

Section 1692e(5) states that the "threat to take any action that cannot legally be taken or that is not intended to be taken" is a violation of the FDCPA. Plaintiffs claim that the Vogler defendants violated that section because the debt they sought to collect was partially time-barred under the applicable statute of limitations. The defendants agree that the statute of limitations in Missouri is five years for an oral lease, but defendants contend that the statute does not begin to run until the lease (including possession of the premises) has terminated. § 516.160 RSMo. Defendants cite § 516.160 RSMo, that states:

In an action brought to recover a balance due on a mutual, open and current account, where there have been reciprocal demands between the parties, the cause of action shall be deemed to have accrued from time of the last item in the account on the adverse side.

Plaintiff responds that this action relates to an oral lease contract, not an "agreement on account," and that the two are distinct causes of action with different elements and different statutes of limitations. Plaintiff further argues that his lease was not a continuous account that ran from 2007 to 2015 as contemplated by § 516.160, but rather a contract for a month-to-month tenancy subject to the five-year statute of limitations for contracts in § 516.120 RSMo. *See* § 441.060(3) RSMo ("All contracts or agreements for the leasing …of …houses, tenements or other…shall be held and taken to be tenancies from month to month.) Plaintiff thus argues that the defendants were attempting to collect rent that was due years before the five-year limitations period, which has expired for rent due in 2007 through 2010.

Defendants support their contention with *Beck v. Strong*, 572 S.W.2d 484, 491 (Mo. App. 1978), in which the lessors sought (among other things) unpaid rents due under an 89-year lease. The court noted

> It is true that the [lessors] accepted only $200.00 per month rent for the periods after the first five years to the date of trial, but there is no evidence, other than that, that they waived payment of the additional amounts. Nor is the recovery of the additional monthly rent due barred by limitation. § 516.100, 516.160, RSMo.

*Id.* That court thus assumed without discussion that the accumulation of rents due to the lessors constituted a mutual, open, and current account subject to § 516.160 RSMo. *Beck* relied on *Haycraft v. Haycraft*, 154 S.W.2d 617, 620 (Mo. App. 1941), in which the lessee argued that rents that had been due more than five years before the lawsuit's filing

10

were time-barred under the statute of limitations. The lessee in *Haycraft* argued that the lessor there had a cause of action for rent as it became due each year, and thus the statute of limitations had been triggered and expired for rents due more than five years before the lawsuit. That court held that the lessor "treated the transactions as a continuous mutual, open and current account concerning one and the same tract of land" and that because the "last item thereof" had not become time-barred, none had been barred. 154 S.W.2d at 620.

Few cases discuss § 516.160 and the concept of "mutual, open, and current accounts." Although the Missouri Supreme Court apparently has addressed a similar question regarding § 516.160 only once and in the context of past-due support payments between a divorced couple, that opinion is compelling here. *Allen v. Allen*, 364 Mo. 955 (1954). The wife, who sought past-due child support payments that were to have been paid monthly, contended that the husband's obligation was continuing and thus her claim for child support was deemed to have accrued from the time of the last item in the account. *Id.* at 960. That court noted that "a cause of action accrues, and limitations thereon begin to run, when the right to sue arises." *Id.* at 962 (internal quotations omitted). "Under the statute, a plaintiff may wait until all installments are due and then [bring] one action, but, if while waiting some installments have been due for the period of limitation, they will be barred." *Id.* at 963 (internal quotations omitted). The court held plaintiff could not recover for payments that had been due more than five years before the lawsuit was initiated. *Id.* The same logic should be applied here. The defendant landlord could have sued for rent as each payment came due. The defendant landlord (and his agents) could later bring one action for recovery of past-due rent, but the

11

installments due for longer than the five-year limitations period were time-barred. Plaintiff has thus stated a claim under § 1692e(5).

### 5. Section 1692f(1) --- collection of unauthorized amounts

Section 1692f provides that a debt collector may not collect "any amount (including interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1). Defendants argue in their memorandum that "collection of the rent due is not 'incidental to the principal obligation' --- it is the principal obligation" and that "collection of rents under an oral agreement is 'permitted by law.'" (#15 at 8.) Defendants state that because plaintiffs do not allege any factual support that the lawsuit represented an attempt to collect amounts not provided in the initial agreement, plaintiff's claim for violation of § 1692f cannot stand. It is true that plaintiffs did not specifically state that unlawful interest charges were included in the debt allegedly owed by plaintiffs. However, plaintiff does refer to the disparities between the amounts demanded in the Dunning Letter ($21,164.22) versus the "verification" provided ($15,480) versus that sought in the St. Louis County collection lawsuit ($24,972). Plaintiff argues in his response memorandum that defendants issued a garnishment to collect a void judgment which otherwise contained an unlawful amount of interest, which may indeed be the explanation for the differing amounts. Plaintiff also alleged that his agreement with Reynolds had been satisfied through plaintiff's payments and his work on Reynolds's properties. Plaintiff has adequately pleaded that defendants violated § 1962f(1). (*See also* Complt. ¶ 111(j) ("attempting to collect an amount not expressly authorized by the agreement that created the alleged debt.")).

### 6. The Lawsuit and Default Judgment

Plaintiff claims that the filing of the state collection action constituted several FDCPA violations including: using "false, unfair, and misleading representations" (§ 1692e-f), misrepresenting the amount, character and legal status of the debt (§§ 1692e(2)(A), 1692g(a)(1)), and filing a debt collection lawsuit for the unfair, harassing, and abusive purpose of obtaining either a default or consent judgment on a debt for which defendants had neither intent nor means to prove (§ 1692f(1)). (Complt. ¶¶ 111(g, h, j).) Rather than discuss each of the statutory sections individually, the Court will address the generalized arguments made by the parties regarding the lawsuit and its alleged FDCPA violations.

Defendants contend that the default judgment and garnishment could not have violated the FDCPA because plaintiff did not plead that defendants had actual knowledge of the bankruptcy case. But plaintiff cites the taking of the default judgment and filing of a garnishment as evidence that defendants violated § 1692 because the defendants were not legally able to do so in light of the automatic stay. The St. Louis collection lawsuit was filed on April 13, 2015. Plaintiff's bankruptcy case was filed on June 30, 2015, but the case was not listed on the Court's PACER website until July 3, 2015. The default judgment was taken on the first day the courts were open after the holiday weekend, on July 7, 2015. The garnishment was taken two days later. Although plaintiff does not now disagree that the defendants received actual notice until sometime after the default judgment, plaintiff points out that the automatic stay is applied (as the name implies) automatically and regardless of notice, and that the FDCPA makes debt collectors strictly liable regardless of their knowledge of the legality of their conduct. *See Erickson v.*

*Johnson*, No. CIV.05-427 (MJD/SRN), 2006 WL 453201, at *3 (D. Minn. Feb. 22, 2006) (observing that although § 1692c does impose a knowledge requirement on the debt collector in order to impose liability, § 1693e is still subject to strict liability "regardless of their knowledge of the legality of their conduct."). Furthermore, defendants do not refute that they failed to promptly correct the default judgment after they *did* have actual knowledge of the bankruptcy stay. In light of the strict liability imposed by the statute and plaintiff's allegations of damages stemming from that delay (during which plaintiff was forced to obtain counsel to correct the default judgment), the motion to dismiss these claims is denied.

    **B.**    **Count II: Violation of the MMPA Against Defendant Reynolds**

To bring an claim under the Missouri Merchandising Practices Act ("MMPA"), plaintiff must plead that he purchased or leased merchandise primarily for personal, family, or household purposes and suffered an ascertainable loss of money as a result of an act declared unlawful by § 407.020 RSMo. *See Hess v. Chase Manhattan Banks, USA, NA*, 220 S.W.3d 758, 773 (Mo. banc. 2007). Defendant Reynolds contends that plaintiff fails to adequately plead how the filing of the lawsuit resulted in the "loss" of plaintiff's filing his bankruptcy petition. Plaintiff alleged in his complaint that he suffered

> an ascertainable loss of money in the amounts, including but not limited to the costs he incurred for filing for bankruptcy that he would not have had to file but for Defendant's unlawful collection suit and the costs he incurred by having to hire additional legal counsel to set aside Defendant's illegally obtained default judgment.

(#1 ¶ 127.) Plaintiff further explains that he filed bankruptcy rather than hire an attorney to represent him in the collection suit. (*Id.* ¶¶ 82-83.) Of course, ultimately plaintiff did

incur expenses required to set aside the default judgment in the collection suit, which further contributed to his loss. Plaintiff's allegations suffice to state a claim under the MMPA.

Defendant Reynolds also disputes that plaintiff can rest his claim on the "unlawful action" of filing a time-barred lawsuit when, Reynolds argues, the collection suit was in fact not time barred. As discussed in the section above, § 516.120 --- not § 516.160 --- applies to these circumstances, and the rent that came due more than five years before the collection suit was filed is time-barred. However, whether Reynolds and his attorneys acted appropriately with respect to the default judgment and garnishment (and, in particular, their efforts to vacate those orders upon learning about the automatic stay) may also be at issue.

The MMPA count therefore survives defendant's motion to dismiss.

### C. Count III: Malicious Prosecution Against All Defendants

Under Missouri law, a claim for malicious prosecution requires proof of the following elements: (1) defendant commenced an earlier lawsuit against the plaintiff, (2) the proceeding terminated in the plaintiff's favor, (3) the defendant lacked probable cause for initiating the lawsuit, (4) the defendant was motivated to commence the suit by malice, and (5) the plaintiff suffered damage as a result. *McAninch v. Traders Nat. Bank of Kansas City*, 779 F.2d 466, 469 (8th Cir. 1985); *see also Sanders v. Daniel Intern. Corp.*, 682 S.W.2d 803, 807 (Mo. banc 1984). Defendants contend that plaintiff fails to establish termination of the suit in plaintiff's favor, lack of probable cause, or malice.

As for whether the suit was terminated in plaintiff's favor, the parties agree that defendants dismissed the collection suit against plaintiff without prejudice on October 27,

15

2015. Such a dismissal without prejudice, plaintiff says, constitutes a termination in favor of the party-defendant when the party who initiated the case manifests an intent to abandon the claim. *Stevens v. Redwing*, 146 F.3d 538, 546 (8th Cir. 1998); *Shinn v. Bank of Crocker*, 803 S.W.2d 621, 626 (Mo. App. 1990). Defendants point out that the collection suit was dismissed only due to the discharge of the debt effectuated by plaintiff's bankruptcy case. Thus, defendants argue, there was no claim to abandon --- the bankruptcy discharge eliminated any claim defendant Reynolds had to past-due rent payments.

This Court agrees that the dismissal without prejudice did not constitute resolution in plaintiff's favor for purposes of a malicious prosecution action. Thus, Count III will be dismissed.

### D. Subject Matter Jurisdiction

Defendant Reynolds devotes one paragraph to his argument that the Court lacks jurisdiction over plaintiff's claims against Reynolds. Defendant asserts that because plaintiff's FDCPA claim (over which this Court has federal question jurisdiction, 28 U.S.C. § 1331) is against only the Vogler defendants, there can be no supplemental jurisdiction over plaintiff's state law claims against Reynolds pursuant to 28 U.S.C. § 1367(a). The courts, however, "have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). Furthermore, "such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties." *Id.* As for whether plaintiff's claims against the Vogler defendants and defendant Reynolds "form part of the same case or controversy," the test is whether the

claims "derive from a common nucleus of operative fact." *Myers v. Richland Cty.*, 429 F.3d 740, 746 (8th Cir. 2005) (internal quotation omitted). "A plaintiff's claims derive from a common nucleus of operative fact if the 'claims are such that he would ordinarily be expected to try them all in one judicial proceeding.'" *OnePoint Sols., LLC v. Borchert*, 486 F.3d 342, 350 (8th Cir. 2007) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)). The claims here arise from the same collection activities on the same debt by a creditor and his agents. These are the sorts of claims that one would expect to be tried together, and the Court properly has supplemental jurisdiction over them pursuant to 28 U.S.C. § 1367.

**IV.    Conclusion**

As to Count I, plaintiff's claim regarding computation of the dispute period is not cognizable, but the remainder of Count I withstands defendant's motion to dismiss. Count II also withstands defendant's motion to dismiss. Count III will be dismissed for failure to state a claim. Finally, the Court denies defendant Reynolds's motion to dismiss for lack of subject matter jurisdiction.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' Motions to Dismiss (#14, #16) are **DENIED** in part and **GRANTED** in part, as described herein.

Dated this   22nd   day of July, 2016.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT