**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **JESSE L. MORGAN**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:15-cv-1654-SNLJ |
| | ) | |
| **THE VOGLER LAW FIRM, P.C., et al.**, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND COSTS**

**I.   INTRODUCTION**

For the past three years, the parties have litigated the debt collection misconduct of the Vogler Law Firm, its employees, and its creditor-client.  During that time, the parties have submitted more briefing than most appellate cases.  As of the date of this filing, there have been 125 docket entries.  This includes two (2) responses to motions to dismiss, four (4) motions for summary judgment, two (2) replies in support of summary judgment, and two (2) motions for damages. Plaintiff, alone, has drafted hundreds of pages' worth of motions and corresponding briefing.

This does not take into account the countless written communications between Plaintiff, his counsel, or the opposing parties.  In addition, this does not reflect the fact that the day after being sanctioned, Defendants attempted to reopen Plaintiff's long-ago discharged bankruptcy. This began a months-long ordeal in which Defendants registered a shell company in an attempt to purchase Plaintiff's MMPA claims from the bankruptcy estate.  The trustee ultimately agreed with Plaintiff that Plaintiff did possess standing to pursue his case.  After resolving this issue, Defendants filed yet another motion to dismiss for lack of standing, years after the case had been

1

filed.  After defeating that motion, Plaintiff prevailed on summary judgment against all four defendants.  When the Defendants refused to stipulate to any damages, Plaintiff was forced to engage in yet another round of briefing in order to secure his full recovery.  Plaintiff was awarded the entire amount he requested from the Court: $3,223.48.   Now, Plaintiff seeks his reasonable attorney's fees and costs that went into this odyssey.

## II.  STANDARD OF REVIEW

The Fair Debt Collection Practices Act requires the payment of costs and reasonable attorney's fees to a successful consumer.

> Any debt collector who fails to comply with any provision of this subchapter . . . is liable to such person in an amount equal to the sum of--[actual damages] [statutory damages] and (3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court.

15 U.S.C. § 1692k(a)(3).  "The FDCPA's statutory language makes an award of fees mandatory." *Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973, 978 (9th Cir. 2008) (Camacho II) (citation omitted)

Similarly, "[t]he MMPA permits a court to award a prevailing party 'reasonable attorney fees.'"  *Berry v. Volkswagen Grp. of Am.*, Inc., 397 S.W.3d 425, 436 (Mo. 2013) (quoting Mo. Rev. Stat. § 407.025.2). "Awarding attorney's fees to successful plaintiffs [under the MMPA] is the rule rather than the exception." *Grabinski v. Blue Springs Ford Sales, Inc.*, 203 F.3d 1024, 1028 (8th Cir. 2000).  Given the structure of the FDCPA and the MMPA, attorney's fees are not construed as a special or discretionary remedy; rather, both Acts mandate an award of attorney's fees as a means of fulfilling the legislature's intent that consumers enforce consumer-protection statutes as private attorneys-general. *Graziano v. Harrison*, 950 F.2d 107, 113 (3d Cir. 1991); *see also, DeJesus v. Banco Popular de Puerto Rico*, 918 F.2d 232, 235 (1st Cir. 1990).

2

In this case, having prevailed on Summary Judgment on Counts I and II of his Complaint, and Judgment having been entered, Plaintiff is without question the prevailing party. As the prevailing party, Plaintiff is entitled to a mandatory award of costs and reasonable attorney's fees. Under the lodestar method discussed below, the hourly rates of Plaintiff's attorneys and the amount of time expended in litigating this matter to a successful conclusion are reasonable.

### III.  ARGUMENT

**A.  PLAINTIFF'S ATTORNEY'S ARE TO BE AWARDED FEES PURSUANT TO THE LODESTAR FORMULA.**

The U.S. Supreme Court has explained the calculation for an award of attorney's fees as follows:

> The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. The calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services.

*Hensley v. Eckerhart*, 461 U.S. 424, 433; 103 S. Ct. 1933, 1939; 76 L. Ed. 2d 40 (1983). While the *Hensley* decision dealt with civil rights under 42 U.S.C. § 1988, the criteria the Supreme Court outlined is equally applicable here. "The standards set forth . . . are generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party,'" such as the FDCPA and MMPA. *Id.*; *see also Berry v. Volkswagen Grp. of Am., Inc.*, 397 S.W.3d 425, 431 (Mo. 2013) (affirming the trial court's use of the lodestar formula to award attorney's fees for an MMPA claim). "Under the lodestar approach, the Court must multiply the reasonable number of hours expended by a reasonable hourly rate for each individual performing work." *Ladd v. Pickering*, 783 F. Supp. 2d 1079, 1090–91 (E.D. Mo. 2011). The product of that calculation "is

3

strongly presumed to represent a reasonable fee." *Id.* (quoting *Perdue v. Kenny A. ex rel Winn,* 559 U.S. 542, 130 S. Ct. 1662, 1673 (2010)).

Plaintiff herein was represented by Bryan E. Brody and Alexander J. Cornwell of Brody & Cornwell, LLC. Mr. Brody has expended a total of 191.6 compensable hours on behalf of Plaintiff. *See* Affidavit of Bryan E. Brody attached hereto as Exhibit 1. Mr. Cornwell has expended a total of 61.8 compensable hours on behalf of Plaintiff. *See* Affidavit of Alexander J. Cornwell attached hereto as Exhibit 2. An itemized billing statement is attached hereto as Exhibit 3. The hourly rate for the services provided by Mr. Brody is $395.00. The lodestar calculation for the services of Mr. Brody in this matter is $75,682.00 (191.6 x $395/hr = $75,682.00). The hourly rate for the services provided by Mr. Cornwell is $345.00. The lodestar calculation for the services of Mr. Cornwell in this matter is $21,321.00 (61.8 x $345/hr = $21,321.00). Of these amounts, a total of 163.8 hours were expended in prosecuting Count I against the Vogler Law Firm, P.C., Vincent V. Vogler, and Vincent D. Vogler, who are joint and severally liable. Plaintiff expended a total of 89.6 hours in prosecuting Count II against Ronald Reynolds.[1]

This time encompasses counsels' efforts in investigating Plaintiff's claims, researching and drafting pleadings; preparing and serving initial disclosures and written discovery requests; defeating two (2) motions to dismiss, two (2) motions for leave to file responsive pleadings out of time, and a motion to compel untimely discovery requests; successfully opposing Defendant Vogler's collateral attempt to reopen the bankruptcy proceedings in order to purchase its own

---

[1] Plaintiff voluntarily wrote-off a number of entries on his fee invoice. This includes any time that was expended in responding to the Malicious Prosecution claim (Count III), which was dismissed. This also includes time that was expended in filing the Motion to Compel discovery responses, which was already awarded in this Court's Order sanctioning the Defendants. Moreover, while the time spent preparing a motion for fees is ordinarily compensable, *Kurowski v. Krajewski*, 848 F.2d 767, 777 (7th Cir. 1988), Plaintiff has agreed to waive those fees for purposes of the instant request. Lastly, so as to not obtain a double-recovery, any work that was attributable to the case as a whole, as opposed to work performed with respect to Counts I and/or II in particular, was added up and distributed evenly among the Vogler Defendants and Reynolds.

4

client's MMPA claim for pennies on the dollar; drafting a motion for sanctions for Defendants' repeated failure to respond to discovery even after this Court Ordered them to do so; fully briefing four (4) separate Motions for Summary Judgment as to Liability; defeating another Motion to Dismiss under 12(b)(1) filed years after the case was initiated for an alleged lack of standing; fully briefing two (2) separate Motions for Damages after summary judgment was granted; and preparing the instant Motion for Attorney's Fees and Costs.

Counsel has carefully reviewed the time records to ensure that only productive and necessary efforts are included in this fee petition. Brody & Cornwell, LLC also incurred costs and litigation expenses of $793.66 in the prosecution of this matter. Plaintiff's counsel anticipates having to expend additional time and/or costs to complete this litigation and expressly reserves the right to submit a supplemental affidavit of additional fees incurred in preparing a reply in support of the instant motion.

**B.    THE AWARD OF ATTORNEY'S FEES IS NOT LIMITED BY THE AMOUNT OF DAMAGES.**

"Congress' purpose in adopting fee-shifting provisions was to strengthen the enforcement of selected federal laws by ensuring that private persons seeking to enforce those laws could retain competent counsel." *City of Burlington v. Dague*, 505 U.S. 557, 568 (1992). Fee shifting statutes are designed to combat two issues that would otherwise prevent people from obtaining competent attorneys. "First, many potential plaintiffs lack sufficient resources to hire attorneys." *Id.* Furthermore, "many of the statutes to which Congress attached fee-shifting provisions typically will generate either no damages or only small recoveries; accordingly, plaintiffs bringing cases under these statutes cannot offer attorneys a share of a recovery sufficient to justify a standard contingent-fee arrangement." *Id.*

Thus, the fee should not be reduced to achieve a result that is proportional to the underlying recovery. "The whole purpose of fee-shifting statutes is to generate attorneys' fees that are *disproportionate* to the plaintiff's recovery." *Millea v. Metro-N. R. Co.*, 658 F.3d 154, 169 (2d Cir. 2011) (emphasis in original). The *Millea* court explained that this policy is especially important for claims where a small financial recovery is expected. *Id.* The availability of a lodestar fee, without regard to considerations of proportionality, assures that "claims of modest cash value can attract competent counsel." *Id.*

Courts uniformly adhere to this principal when awarding attorney's fees in cases involving the FDPCA and state consumer protection statutes. *See, e.g.*, *Evankavitch v. Green Tree Servicing, LLC*, 2014 WL 4437645, at *3 (M.D. Pa. Sept. 9, 2014) (awarding $86,351.94 in fees and costs in an FDCPA case where only $1,000.00 in statutory damages was awarded); *Gradisher v. Check Enforcement Unit*, 2003 WL 187416 (W.D. Mich. Jan. 22, 2003) (attorney's fees award of $69,872.00 where plaintiff recovered statutory damages of $1,000.00 under the FDCPA); *De Amaral v. Goldsmith & Hull*, 2014 WL 1309954 (N.D. Cal. Apr. 1, 2014) (plaintiff prevailed on dispositive motions under the FDCPA and California's consumer fraud act and was awarded statutory damages of $1,000.00 and a fee of $111,263.00).

Accordingly, this Court need only perform an academic review of the hours spent along with the rates charged – irrespective of the underlying damage award – in order to determine the reasonable amount of attorney's fees to award.[2]

---

[2] Plaintiff's counsel notes that the damage award obtained in this case is anything but "minimal." While most cases involving debt collection misconduct generally result in damages of $1,000.00 – at most – Plaintiff was awarded over three times that amount: $3,223.48. If anything, the higher amount obtained justifies the amount of time that was necessary in order to secure that result.

**C.    THE REQUESTED FEES ARE CONSISTENT WITH THE PREVAILING RATES IN THE COMMUNITY AS WELL AS OTHER COURT DECISIONS.**

The amount of an attorney's fee rate is "to be calculated according to the prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895, 104 S. Ct. 1541, 1547, 79 L. Ed. 2d 891 (1984). "In order to encourage able counsel to undertake FDCPA cases, as Congress intended, it is necessary that counsel be awarded fees commensurate with those which they could obtain by taking other types of cases . . . . Paying counsel in FDCPA cases at rates lower than those they can obtain in the marketplace is inconsistent with the congressional desire to enforce the FDCPA through private actions, and therefore misapplies the law." *Tolentino v. Friedman*, 46 F.3d 645, 652-653 (7th Cir. 1995). Of similar effect, the paternalistic nature of the MMPA supports the provision of market rates in order to ensure consumers are able to stand on equal footing and obtain competent legal counsel. *See Arcese v. Daniel Schmitt & Co.,* 504 S.W.3d 772, 789 (Mo. Ct. App. 2016).

As outlined immediately below, the rates of $395 and $345 for attorneys Brody and Cornwell, respectively, are consistent with (and, in many cases, *less* than) the prevailing market rates and are also consistent with prior decisions having considered the issue.

**1)    The Requested Rates of Plaintiff's Attorneys are Consistent with the Community.**

The most recent fee surveys for the St. Louis area, including the Missouri Lawyers Weekly's Billing Rates for 2016, the National Law Journal's 2014 Fee Survey, and the 2015-2016 U.S. Consumer Law Survey all support $395.00 as a reasonable rate for an attorney with my experience and area of practice.

For example, the 2015-2016 U.S. Consumer Law Survey, the most current fee survey available for debtor's and creditor's rights identifies the average hourly rate of $400.00 for

7

attorneys with eleven to fifteen years of experience in the St. Louis, Missouri region.  *See* US Consumer Law Survey attached hereto as Exhibit 4, at p. 276.  Attorney Brody possesses approximately thirteen years of experience.  *See* Exhibit 1, at ₱ 3.  In addition, the average hourly rate for attorneys with six to ten years of experience in the St. Louis, Missouri region is $425.00.  *See* Exhibit 4, at p. 276.  Attorney Cornwell possesses approximately six years of experience.  *See* Exhibit 2, at ₱ 4.  According to the National Law Journal's 2014 Fee Survey, the average partner rate for firms located in the St. Louis, Missouri area are significantly higher than the $395.00 rate and $345.00 rates attorneys Brody and Cornwell have billed in this case.  *See* NLJ Fee Survey, attached hereto as Exhibit 5.

Notably, the upper 25% of consumer protection attorneys in the St. Louis area bill at a rate of $475.00 per hour, and the top 5% of such attorneys bill at a rate of $725.00.  *See* Exhibit 4, at p. 275.  The FDCPA has been in existence since 1978 and has resulted in thousands of state and federal claims in Missouri over those four decades.  Nevertheless, the Missouri Supreme Court has only issued two decisions involving the FDCPA during that time—attorneys Brody and Cornwell briefed and argued both of those decisions.  *See* Exhibit 4, at ₱ 8.  In addition, attorneys Brody and Cornwell have been responsible for numerous other favorable decisions in this District involving FDCPA and MMPA claims.  As with any other market, a better product warrants a higher price.  The results that attorneys Brody and Cornwell achieved in this case, as well as their experience in other cases involving the FDCPA and MMPA, speak for themselves.  If anything, this body of work justifies a rate towards the top of the spectrum.  The fact that the requested rates are actually *lower* than the *median* rates for the community underscores the reasonableness of the requested rates.

8

### 2) Multiple Courts Already Have Held that the Requested Rates of Plaintiff's Counsel are Reasonable.

Missouri courts have already approved and awarded fees for attorneys Brody and Cornwell of at least $395.00 per hour, including on disputed fee motions. *See*, *e.g.*, *Sparling v. BBC Motors, Inc.*, Jefferson County, Missouri Circuit Court Case No. 15JE-AC04166-01 (Sept. 28, 2016) (awarding 100% of the billable time for attorneys Brody and Cornwell at the requested rate of $395.00 after defendant sought a reduction to at least $350.00 per hour following a successful trial on the merits under the MMPA in favor of the plaintiff-consumer). In addition, this District has also found that the requested rates of $395.00 and $345.00 are reasonable partner rates in the current market. *See also Executive Affiliates, Inc. v. AAF-McQuay, Inc.*, No. 4:12–CV–175, 2013 WL 6571595 (E.D.Mo.2013) (approving $450 hourly rate and citing "a study by Missouri Lawyers Weekly finding that . . . the average billing rate for partners in St. Louis exceeded $400.00 per hour."); *Robinson v. Pfizer Inc.,* No. 4:16-CV-439, 2016 WL 2910272, *1 (E.D. Mo. 2016) (approving $400 hourly rate); *Abdullah v. County of St. Louis, Mo.*, No. 4:14 CV 1436, 2015 WL 5638064, *5 (E.D. Mo. 2015) (approving $400 and $350 hourly rates). Both of the rates for attorneys Brody and Cornwell are less than the rates this District has already found to be reasonable for attorneys with comparable experience and skill.

### 3) This Court's Earlier Decision on the Motion for Sanctions Further Supports the Reasonableness of the Requested Rates of Plaintiff's Attorneys.

On April 17, 2017, this Honorable Court entered its Order sanctioning Defendants for their repeated failure to respond to Plaintiff's discovery requests—an Order with which Defendants, to this day, have never complied. (Doc. #51). Within its Order, this Court awarded Plaintiff the attorney's fees incurred in preparing his Motion to Compel, which amounted to 2.4 hours. Plaintiff sought the hourly rate of $395.00 for the work attorney Brody performed. After the parties briefed

the issue, this Court entered judgment in Plaintiff's favor in the full rate of $395.00/hour for attorney Brody.  Thus, this Court's prior decision in this case supports the fact that the requested rates are reasonable.

**D.      THE AMOUNT OF TIME PLAINTIFF'S ATTORNEYS EXPENDED IN ORDER TO ENSURE A FAVORABLE RESULT IS REASONABLE.**

**1.      Each Hour Expended in this Matter is Traceable to One of Defendants' Actions (or Inactions).**

"While [a defendant] is entitled to contest vigorously [a plaintiff's] claim, once it does so it cannot then complain that the fees award should be less than claimed because the case could have been tried with less resources and with fewer hours expended." *Henson v. Columbus Bank & Trust Co.*, 770 F. 2d 1566, 1575 (11th Cir. 1985).  A defendant "cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response." *City of Riverside v. Rivera*, 477 U.S. 561 at n.11 (U.S. 1986).

Over the course of the last three years, Defendants' litigation strategy has been one of two diametrical choices.  At times, Defendants went "all-in" on defending this case.  Defendants initially chose to vigorously oppose Plaintiff' claims, including extensive and contentious discovery and motion practice, ending in four motions for summary judgment.  Defendants fomented this litigation, greatly increasing the attorney time and expense incurred by all parties.  Defendants' multiple Fed. R. Civ. P. 12(b) motions, failure to respond to discovery, and attempt to purchase the claim from the bankruptcy estate are well-documented.  Prior to the motions for summary judgment, Plaintiff proposed a stipulation of liability and/or damages, which would have greatly reduced the extent of the summary judgment and damages briefing (if not eliminated the need altogether), but Defendants would not agree.  Instead, Defendants filed lengthy opposition papers to both the summary judgment motions and the subsequent motions for damages.  After

10

those failed, Defendants attempted, once again, to have the case dismissed for an alleged lack of standing, which required yet another round of briefing.

However, on other occasions, Defendants simply chose to do nothing, including missing multiple deadlines in the scheduling order, neglecting the civil rules of procedure, and even ignoring this Court's sanctions Order—each of these occasions required Plaintiff to expend even more time in order to force Defendants to comply with their legal duties.  In fact, when going through each stage of this case line-by-line, it becomes apparent that every hour expended was in response to one of Defendants' motions or required by one of Defendants' failure to comply with an order or deadline.

| *Work Performed* | *Reason for the Time Expended* |
| --- | --- |
| 21-Page Complaint | Drafted in response to Defendants' multiple violations of state and federal law |
| 17-Page Response to Reynolds' Motion to Dismiss | Drafted in response to Defendant Reynolds' motion to dismiss which was denied |
| 29-Page Response to Voglers' Motion to Dismiss | Drafted in response to Defendant Voglers' motion to dismiss which was denied |
| Four Sets of Written Discovery Requests (combined 86 Interrogatories, 119 Requests for Production, and 56 Requests to Admit) | Only served after Defendants refused to Offer Judgment or stipulate to the amount on the remaining issue of damages |
| Preparation and Attendance of Plaintiff's Deposition | A result of Defendants' choice to take Plaintiff's deposition after having already admitted to liability by failing to file an Answer. |
| 5-Page Motion to Compel Discovery from Defendant Reynolds | Only filed after Defendant Reynolds failed to respond to written discovery and then ignored Plaintiff's golden rule letters |
| 5-Page Motion to Compel Discovery from the Vogler Defendants | Only filed after the Vogler Defendants failed to respond to written discovery and then ignored Plaintiff's golden rule letters |
| 15-Page Opposition to Motion for Leave to File Answers | Required because of Defendants' initial failure to timely respond and subsequent attempt to seek leave after the pleadings deadline passed |
| 9-Page Opposition to Reynolds' Motion Compel | Filed in response to Reynolds' Motion to Compel discovery that was not served |

| | |
|---|---|
| Motion to Stay Pending Bankruptcy Determination and corresponding briefings with the Trustee | A result of Defendants' unsuccessful attempt to reopen the discharged bankruptcy after being sanctioned |
| Motion to Lift Stay | Filed after the Trustee rejected Defendants' arguments regarding the MMPA claim |
| 12-Page Memorandum in Support of Summary Judgment as to Reynolds | Only filed after Reynolds refused to Offer Judgment or stipulate to liability |
| 16-Page Memorandum in Support of Summary Judgment as to the Vogler Law Firm | Only filed after the Vogler Law Firm refused to Offer Judgment or stipulate to liability |
| 16-Page Memorandum in Support of Summary Judgment as to the Vincent D. Vogler | Only filed after Vincent D. Vogler refused to Offer Judgment or stipulate to liability |
| 15-Page Memorandum in Support of Summary Judgment as to the Vincent V. Vogler | Only filed after Vincent V. Vogler refused to Offer Judgment or stipulate to liability |
| 30-Page Reply in Support of Motion for Summary Judgment as to the Vogler Defendants | Filed in response to the Vogler Defendants' combined attempt to dismiss the case based on an alleged lack of standing |
| 16-Page Reply in Support of Motion for Summary Judgment as to Reynolds | Filed in response to the Reynolds' Opposition on the issue of liability |
| 12-Page Memorandum in Support of Damages as to the Vogler Defendants | Only filed after the Vogler Defendants refused to Offer Judgment or stipulate to damages |
| 7-Page Memorandum in Support of Damages as to the Reynolds | Only filed after Reynolds refused to Offer Judgment or stipulate to damages |
| 13-Page Reply in Support of Motion for Damages as to the Vogler Defendants | Filed in response to the Vogler Defendants' Opposition on the issue of damages |
| 10-Page Reply in Support of Motion for Damages as to Reynolds | Filed in response to the Reynolds' Opposition on the issue of damages |

As illustrated, Defendant did just enough to avoid the entry of a default judgment but just little enough to require Plaintiff to expend even *more* resources trying to get Defendants to respond to and/or comply with the scheduling order.  As this Honorable Court previously noted, Defendants' actions were "puzzling at best."  (Doc. #51 at 5).  This "one-foot-in, one-foot-out" litigation strategy proved to be a time-consuming adversary.  Given that each hour expended in this case is traceable to an action Defendants either took or failed to take when required to do so, it is impossible to argue that the hours Plaintiff's counsel billed were anything but necessary and reasonable to secure Plaintiff's full recovery.

12

### 2. Defendants Ignored Every Single Opportunity to Resolve this Matter.

The sheer amount of work Defendants caused in this case becomes even more noteworthy when realizing that Defendants possessed *numerous* opportunities to resolve the case before this point.  After failing to answer the Complaint, Defendants ignored every one of Plaintiff's attempts to settle this matter, and Defendants never served a Rule 68 Offer of Judgment.  On January 27, 2016, before drafting the extensive 17-page and 29-page responses to Defendants' Motions to Dismiss, Plaintiff's counsel conveyed a *global* settlement demand as to all four defendants, inclusive of damages, fees, and costs, of just $9,900.00.  *See* 1/27/16 Email attached hereto as Exhibit 6.  Defendants ignored the email.  On September 19, 2016, after the Court denied the Motions to Dismiss, Plaintiff's counsel reached out once again regarding a potential resolution.  Plaintiff conveyed another all-inclusive, and global, settlement demand of just $19,000.00, which was significantly less than the actual fees Plaintiff's counsel had incurred to that point.  *See* 9/19/16 Email attached hereto as Exhibit 7.  In the alternative, Plaintiff was willing to accept judgment in the amount of just $2,235 (which is about $1000 less than the amount Plaintiff ultimately was awarded) and let the Court decide the amount of fees as of that date.  (*Id.*).  Almost prophetically, Plaintiff's counsel cautioned that **"[i]f we are unable to resolve the case at this stage, we intend to attach this email, as well as our prior email, to our eventual fee motion to demonstrate to the Court that the Defendants possessed numerous opportunities to resolve this matter before forcing us to continue and incur additional fees**."  (*Id.*).  Defendants ignored the email.  On March 2, 2017, after discovery was complete and before filing the motions for summary judgment, Plaintiff's counsel provided another settlement figure and further provided that "[i]f any single defendant wishes to discuss resolution on an individual basis and/or would like to provide an individual offer for settlement, we are happy to have that dialogue as well."  *See* 2/2/17 Email

13

attached hereto as Exhibit 8. Defendants ignored the email. Lastly, on May 1, 2017, after having filed the opening motions for summary judgment but before having to prepare a Reply, Plaintiff's counsel sent a fourth, and final, email regarding the possibility of a resolution. See 5/1/17 Email attached hereto as Exhibit 9. Defendants ignored the email.

Heeding the definition of insanity, Plaintiff's counsel did not send any more emails with settlement demands expecting a different result after the four previous ones were ignored altogether. Instead, Plaintiff put his head down, went to work, and continued to prosecute his case. Ultimately, Plaintiff achieved a better result than the very same amount he would have accepted on an offer of judgment nearly two years ago. Viewed in this context, Plaintiff' counsel "did not inflate this small case into a large one; its protraction resulted from the stalwart defense. And although defendants are not required to yield an inch or to pay a dime not due, they may by militant resistance increase the exertions required of their opponents and thus, if unsuccessful, be required to bear that cost." *Mcgowan v. King, Inc.*, 661 F.2d 48, 51 (5th Cir. 1981).

      **3.**      **The Few Other Courts Which Have Addressed Fee Motions at Comparable Stages Have Held that Plaintiff's Requested Fee is Reasonable.**

The number of decisions addressing a fee motion at this stage of litigation are few and far between. The reason for this is manifest: most defendants tread carefully when choosing whether to vigorously defend strict liability claims with fee-shifting provisions. It makes even less sense to continue and litigate a case after the court has already denied a motion to dismiss and decided that the allegations, if proven, would support liability—which is precisely what occurred in this case. That is why most decisions addressing a motion for attorney's fees occur early on in the case and, in the majority of instances, follow a Rule 68 Offer of Judgment. That said, there are a handful decisions addressing the reasonableness of attorney's fees in FDCPA actions (and their state law analogues to the MMPA) where, as here, a party decides to defend a claim over the course of

14

multiple years through the entry of judgment on the merits. The decisions that are available demonstrate the number of hours expended in this case are reasonable.

For example, in *De Amaral v. Goldsmith & Hull*, the court ruled upon a motion for attorney's fees on a matter that possesses striking similarities to our case—both procedurally and factually. No. 12-CV-03580-WHO, 2014 WL 1309954, at *1 (N.D. Cal. Apr. 1, 2014). In *De Amaral*, as in this case, the plaintiff filed an FDCPA claim and a claim under the California analogue to the MMPA for a law firm's violations during an underlying collection suit. *Id.* After extensive motion practice, the plaintiff moved for summary judgment as to the law firm's and creditor's liability and damages under the FDCPA and the state law claim, which the court granted. *Id.* As occurred in our case, after the court granted the motions, the plaintiff's counsel was instructed to submit a motion for attorney's fees. *Id.*

The plaintiff in *De Amaral* was represented by two attorneys who specialize in consumer protection law. *Id.* One was a partner with 14 years of experience and a billable rate of $450 and the other was an associate with seven years of experience and a billable rate of $350. *Id.* at *3; *Cf.* (the rate of attorney Brody is $395 with thirteen years of experience and the rate of attorney Cornwell is $345 with six years of experience). The docket in *De Amaral* nearly mirrors ours' in terms of the scope and type of work performed. *See* Docket Report attached hereto as Exhibit 10. In fact, the parties in *De Amaral* drafted even less motions than our case, and they also did not have to litigate the collateral issue of whether to reopen the bankruptcy proceeding. *See id.* Nevertheless, in order to reach the same stage we are now at, the partner in *De Amaral* billed a total of 220.5, and the associate billed 52.9 hours. *De Amaral*, 2014 WL 1309954, at *2; *Cf.* (attorney Brody billed 191.6 hours and attorney Cornwell billed 61.8 hours). In total, the plaintiff's

15

attorneys in *De Amaral* requested fees in the amount of $117,740.00 after obtaining the $1,000.00 statutory damage award for their client. *Id.*

The defendants in *De Amaral* argued that the court should arbitrarily reduce the award given that the plaintiff had sought $6,000 in damages and only obtained a fraction of that amount. *Id.* at *5. In addition, the defendants pointed out that they had offered $500 in damages just a month after the case was filed, which the plaintiff rejected. *Id.* at *6. As defendants reasoned, the minimal increase in recovery did not justify the fee bill of $117,740. *Id.* The court disagreed and reasoned as follows:

> Although the De Amarals received only $1,000 in damages, this amount does not reflect a lack of success. Their purpose was to establish that the defendants violated the FDCPA, and they won. They were successful in their motion to strike and motion for sanctions, and they survived the defendants' motion to dismiss, motion to transfer, motion to strike, and motion for summary judgment. They are entitled to reasonable fees and costs. An across the board percentage reduction in the lodestar figure is not warranted.

*Id.* The court thus granted nearly the entirety of the requested fee bill in the amount of $111,263.00. *Id.* at *8. In doing so, the court also found that the rates of $450 and $350 for consumer protection attorneys with comparable experience as attorneys Brody and Cornwell were reasonable. *Id.* at *3.

In this case, the justification for a full fee award is even greater than *De Amaral*. There, the defendants at least offered *something* early-on in the case. One could argue that the additional $500 obtained in that case did not justify the $111,263.00 in fees. Here, however, Defendants never offered a dime. Despite his repeated attempts at resolution, Plaintiff's overtures were ignored time and again. Plaintiff thus had only but one choice: either continue to litigate or give-up. The fact that Plaintiff received an award greater than the statutory damage award, and greater

16

than the amount which he offered to accept via an offer of judgment at the outset of the case, reaffirms the reasonableness of the time expended.

## IV.  **CONCLUSION**

For the reasons provided above, Plaintiff respectfully requests this Court enter judgment in his favor for attorney's fees against Defendants Vincent D. Vogler, Vincent V. Vogler, and the Vogler Law Firm, P.C., jointly and severally, under Count I of the Complaint for violations of the Fair Debt Collection Practices Act in the amount of $62,706.00 and costs in the amount of $451.80. Plaintiff further requests this Court enter judgment in his favor for attorney's fees against Defendant Ronald Reynolds under Count II of the Complaint for violations of the Missouri Merchandising Practices Act in the amount of $34,297.00 and costs in the amount of $341.80.

Respectfully submitted,

**BRODY & CORNWELL**

/s/ Bryan E. Brody
Bryan E. Brody, #57580MO
Alexander J. Cornwell, #64793MO
7730 Carondelet Avenue, Ste. 135
Clayton, Missouri 63105
Phone: (314) 932-1068
bbrody@ brodyandcornwell.com
acornwell@brodyandcornwell.com
*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

The undersigned attests that, on June 18, 2018, a copy of Plaintiff's Motion for Attorney's Fees and Costs was served by operation of this Court's electronic filing system on the following counsel of record:

Karl W. Dickhaus
E-Mail: kdickhaus@attystl.com

Michael A. Kasperek
E-Mail: mkvoglaw@earthlink.net

                                                         /s/ Bryan E. Brody